UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARIO MARSHALL #370796** | **CIVIL ACTION** |
| **versus** | **NO. 07-321** |
| **LYNN COOPER** | **SECTION: "J" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Mario Marshall, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana. On November 7, 2001, he was found guilty of possession with intent to distribute cocaine in violation of Louisiana law.[2] On December 7, 2001, he was found to be a second offender and was sentenced as such to a term of thirty years imprisonment.[3] The Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence,[4] and the Louisiana Supreme Court denied his related writ application without assigning reasons.[5]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the instant federal application for *habeas corpus* relief.[6] In support of his application, he claims:

1. Petitioner's constitutional rights were violated when the prosecution presented evidence at trial regarding other crimes; and

2. Petitioner received ineffective assistance of counsel.

---

[2] State Rec., Vol. IV of VI, transcript of November 7, 2001, p. 105; State Rec., Vol. I of VI, minute entry dated November 7, 2001; State Rec., Vol. I of VI, jury verdict form.

[3] State Rec., Vol. IV of VI, transcript of December 7, 2001; State Rec., Vol. I of VI, minute entry dated December 7, 2001.

[4] State v. Marshall, 841 So.2d 881 (La. App. 5th Cir. 2003) (No. 02-KA-1067); State Rec., Vol. I of VI.

[5] State v. Marshall, 854 So.2d 345 (La. 2003) (No. 2003-K-0909); State Rec., Vol. I of VI.

[6] The application was originally filed in the United States District Court for the Western District of Louisiana and was subsequently transferred to this Court. Rec. Doc. 1. The state concedes that petitioner's federal application is timely filed. Rec. Doc. 9, p. 4.

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of the instant case:

> The charge against defendant in this case was the result of a joint investigation by the New Orleans Police Department and the Jefferson Parish Sheriff's Office. Sergeant Charles Little (Sergeant Little) testified that he is commander of the Narcotics Unit of the New Orleans Police Department's Third District. Based on information his division received, Sergeant Little and other narcotics officers initiated a surveillance on defendant, Mario Marshall, at 11:45 p.m. on October 30, 2000.
> Sergeant Little testified that defendant was in a green Ford Explorer, parked near 518 South Murat Street in the Mid-City area of New Orleans. A subject named Barry Bowie (Bowie) was a passenger in the vehicle. Sergeant Little stated that he had seen defendant in the Explorer on several previous occasions. Sergeant Little saw Bowie pour something into an orange juice bottle. Bowie then exited the vehicle and leaned against the front fender. After 10 to 15 minutes, defendant exited the vehicle, crossed South Murat Street, and met with an unknown black male. The men conversed briefly, although Sergeant Little could not hear what they said.
> The black male reached into his right pants pocket, removed a single bill, and handed it to defendant. Defendant placed the money in his right front pants pocket. Defendant then removed a clear plastic bag from the back of his pants and pulled out a small object. He handed the object to the black male. The man examined it, and then left the scene on foot. Defendant returned the plastic bag to the back of his pants. Defendant sat on the front steps of the residence at 518 South Murat Street. A short time later, a woman exited the house and joined defendant on the steps.

Sergeant Little continued to watch the house, and he saw an unknown man and woman arrive. He watched the group for several minutes, and then ordered the other surveillance officers to move in and detain defendant and Bowie. The men were transported to the Task Force and Narcotics offices at the Third District station. Sergeant Little ordered Detectives Martin, Vappie, and Davis to conduct a strip search of defendant's person in the men's bathroom there. Sergeant Little did not participate in the search.

Detective Jules Martin (Detective Martin) testified that defendant was led into the bathroom in handcuffs. Once inside, Detective Martin removed the handcuffs. He ordered defendant to remove his shirt and to unbutton his pants. Defendant unbuttoned his pants as instructed, but then reached into the area of his buttocks and retrieved a bag containing what appeared to be cocaine. Defendant quickly put the cocaine to his mouth.

Detective Martin testified that he knew ingestion of cocaine could be fatal, and that he also believed defendant was attempting to destroy evidence. He, therefore grabbed defendant in an attempt to prevent him from swallowing the contraband. A struggle ensued. Defendant began to chew the substance. When Detective Martin tried to remove the bag from defendant's mouth, defendant bit him. Detective Martin and the other officers present were eventually able to subdue defendant and secure the evidence. The material was field tested, and the result was positive for cocaine. Detective Martin testified that a little over half an ounce of cocaine was seized. Defendant also had $18.00 in cash and a set of keys on his person at the time of his arrest.

Deputy Joseph Lopinto (Deputy Lopinto) testified that he is assigned to the Narcotics Division in the Detective Bureau of the Jefferson Parish Sheriff's Office. He testified that, during October, 2000, he conducted a surveillance on an apartment at 3401 Edenborn Drive in Metairie, where he believed defendant resided. During that time, Deputy Lopinto passed the apartment complex 15 to 20 times. He also set up five or six extended surveillances at that location. He watched for a green Ford Explorer.

During his extended surveillances, Deputy Lopinto saw defendant on three occasions. At those times, defendant left the apartment complex, driving the Explorer. Deputy Lopinto followed defendant to a location in the Mid-City area of New Orleans. Deputy Lopinto determined that the Explorer was registered to Yale Washington, who was defendant's wife. The officer noted that the

telephone number at the Edenborn apartment was also registered to Ms. Washington.

Deputy Lopinto testified that, on October 30, 2000, he was contacted by Detective Jules Martin (Detective Martin) of the New Orleans Police Department. Based on what Detective Martin told him, he went to the Third District station in New Orleans. Deputy Lopinto learned that Detective Martin's investigation of defendant had led to a seizure of crack cocaine. Based on the New Orleans arrest, Deputy Lopinto applied for and obtained a Jefferson Parish search warrant for the Edenborn apartment. Detective Martin gave Deputy Lopinto the keys seized from defendant.

Deputy Lopinto went to the Edenborn apartment in the early morning hours of October 31, 2000, in order to execute the search warrant. He was accompanied by Detectives Robby Gerdes and Bruce Harrison, and Lieutenant Timmy Miller. The officers knocked on the door. When they received no response, they used the keys seized from defendant to gain entry. They found Yale Washington and an infant inside the apartment.

Ms. Washington led the officers to where cocaine and currency were hidden. Deputy Lopinto testified that a coffee maker above the refrigerator held 38 individually wrapped rocks of what appeared to be crack cocaine, along with currency and other items. They found a total of $830.00, most of which was in small denominations. The rocks were field tested, and the result was positive for cocaine. On the kitchen table, the officers found a card addressed to Mario and Yale Marshall at 3401 Edenborn. Deputy Lopinto testified that he also found and seized a package of plastic bags located on top of the refrigerator, next to the coffee maker.

Criminalist Edgar Dunn, an expert in the identification and analysis of controlled dangerous substances, testified that he tested a sampling of the rocks seized at the Edenborn apartment, and that the results were positive for cocaine. Detective Bruce Harrison, an expert in the use, packaging, distribution, and valuation of narcotics, testified that, in his opinion, the amount of cocaine found during the search, and the manner in which it was packaged, were indicative of possession with intent to distribute.[7]

---

[7] State v. Marshall, 841 So.2d 881, 885-87 (La. App. 5th Cir. 2003) (No. 02-KA-1067); State Rec., Vol. I of VI.

"Other Crimes" Evidence

Petitioner claims that his constitutional rights were violated when the prosecution presented evidence at trial regarding his other crimes. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> Defendant argues that the admission of detailed testimony regarding his arrest in New Orleans constituted reversible error, as it was inadmissible "other crimes" evidence, used by the state to bolster its case against him. Evidence of other crimes committed by the defendant is generally not admissible at trial. LSA-C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La. 1973). However, when such evidence tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Silguero, 608 So.2d 627, 629 (La. 1992); State v. Aleman, 01-743, p. 8 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1064.
> LSA-C.E. art. 404 B(1) provides:
>
>> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
>
> Under Prieur, the State must satisfy several requirements before other crimes evidence may be admitted at trial. The first is to provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. One of the factors enumerated in Article 404 B(1) must be at issue,

have some independent relevance, or be an element of the crime charged. State v. Jackson, 625 So.2d 146, 149 (La. 1993); State v. Maise, 99-734, p. 13 (La.App. 5 Cir. 3/22/00), 759 So.2d 884, 893, writ granted, 00-1158 (La. 9/14/01), 795 So.2d 1219, judgment aff'd, 00-1158 (La. 1/15/02), 805 So.2d 1141.

The probative value of the extraneous evidence must outweigh its prejudicial effect. State v. Maise, 99-734 at p. 13, 759 So.2d at 894. The burden is on the defendant to show he was prejudiced by the trial court's admission of Prieur evidence. State v. Temple, 01-655, p. 20 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 709.

Prior to trial, the State filed a Notice of Intent to Use Evidence of Other Crimes, detailing defendant's activities and his arrest on South Murat Street in New Orleans in the early morning of October 31, 2000. On September 21, 2001, the court heard the matter. The State presented testimony by Detective Jules Martin regarding the events leading up to defendant's New Orleans arrest. The parties stipulated to the police incident report made in connection with that arrest. The report detailed the joint investigation conducted by the Jefferson Parish Sheriff's Office and the New Orleans Police Department.

The defense argued that the State did not show any connection between the narcotics seized from defendant after his New Orleans arrest and the cocaine found at the Edenborn apartment. The State argued that the evidence was admissible under C.E. art. 404 B to show knowledge and intent. The State further argued that the probative value of the evidence was not outweighed by any prejudicial effect it might have on defendant's case. The trial court ruled, "The Court, under 404(B), will allow the evidence in as showing evidence of plan, knowledge, intent, motive and preparation of the defendant. And I think it meets the criteria of 404(B)."

The trial court did not err in allowing admission of evidence relating to defendant's New Orleans arrest. The evidence was relevant for a purpose other than to show that defendant committed the charged offense, or that he was simply a bad person. The testimony that defendant was seen engaging in what appeared to be a drug transaction, and was subsequently found to be in possession of cocaine, was valid to show specific intent to sell the cocaine found in the Edenborn apartment, an element of the charged offense. The fact that defendant was arrested in possession of a key to the apartment also went toward proving defendant had knowledge of the cocaine hidden in the apartment.

> It is arguable that the evidence at issue was admissible under the doctrine formerly known as *res gestae*. When evidence of other crimes or bad acts tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted. State v. Charles, 00-1586, p. 5 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity between the charged and uncharged conduct is required to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Noten, 01-1818, p. 2 (La. 6/25/01), 791 So.2d 607, 609 (per curiam) (quoting State v. Haarala, 398 So.2d 1093, 1097 (La. 1981)).
>
> In the instant case, Jefferson and Orleans Parish law enforcement worked together in investigating defendant. Defendant's arrest in Orleans Parish was used as a basis for the search warrant in Jefferson Parish. The New Orleans arrest and accompanying seizure of cocaine from defendant's person formed part of a chain of events connecting the surveillance of the defendant as he sold drugs on South Murat Street to the recovery of the evidence at the Edenborn apartment. The arrests in Orleans and Jefferson Parishes possess the close connexity required under *res gestae*. See, State v. Noten, *supra*. This Assignment of Error has no merit.[8]

The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.[9]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that

---

[8] Marshall, 841 So.2d at 891-92; State Rec., Vol. I of VI.

[9] State v. Marshall, 854 So.2d 345 (La. 2003) (No. 2003-K-0909); State Rec., Vol. I of VI.

the state courts merely misapplied state evidence law, his claim is not reviewable in this federal proceeding.

Nevertheless, this Court notes that, as the state courts clearly held, the challenged evidence was in fact properly admitted. Although petitioner tries to argue that the evidence constituted improper "other crimes" evidence, it was not. It is true that, pursuant to La. Code Evid. art. 404(B), the state is not allowed to introduce evidence of the accused's unrelated wrongs for the purpose of showing that he is generally of bad character and, therefore, probably also guilty of the crime charged. However, that was not the purpose of the challenged evidence. Rather, as the prosecutor explained at the Prieur hearing:

> Mr. Marshall possessed those 38 rocks of crack cocaine in the Parish of Jefferson. His activities outside of the Parish of Jefferson in the City of New Orleans go to his knowledge and intent, and his intent, secondarily, his intent to distribute that cocaine. I'm not alleging nor am I charging Mr. Marshall with possessing those drugs with the intent to distribute, the ones he had on his person in Orleans on October 31st of 2000. I'm not. Just his actions. And that goes to show under 404(B) his plan, his knowledge, his identity, his mistake – his absence of mistake, his motive, his opportunity, his intent and his preparation. Those elements. And they all hit on it exactly, your Honor.
> But also 404(B) says, "Evidence is not admissible to prove the character of the person in order to show that he acted in conformity therewith."
> I'm not actually even showing that, your Honor, not at all. I'm not showing that he possessed the cocaine in Orleans, therefore, he must have possessed it with the intent to distribute it in Jefferson. There is almost a res gestae in that they occurred at the same time, your Honor. The activities he did in Orleans show his knowledge, show his intent and his intent to distribute that drug.[10]

---

[10] State Rec., Vol. III of VI, transcript of September 21, 2001, pp. 14-15.

Louisiana courts have long held that, in prosecutions for possession with intent to distribute drugs, evidence of prior drug transactions is admissible to establish the accused's intent to distribute drugs. For example, in State v. Temple, 806 So.2d 697 (La. App. 5th Cir. 2001), the court held:

> [I]ntent is an essential element of the crime of possession with intent to distribute heroin. Previous attempts to distribute may be considered in establishing intent. State v. White, 98-91 (La. App. 5 Cir. 6/30/98), 715 So.2d 714, 717, writ denied, 98-2043 (La. 11/25/98), 729 So.2d 577. Thus, evidence of defendant's involvement in prior drug deliveries is clearly an exception to the general prohibition against evidence of other crimes.

Temple, 806 So.2d at 709.[11] That specific exception is founded in the more general principle that highly probative evidence will not be excluded simply because its introduction also relates to another offense. State v. Hollingsworth, 337 So.2d 461, 465 (La. 1976); see also State v. Bell, 315 So.2d 31, 35 (La. 1975) ("When ... relevant and highly probative evidence is necessary to establish the elements of the crime charged, the fact that it involves another crime does not render the evidence objectionable."); State v. Kinchen, 290 So.2d 860, 864 (La. 1974) ("Merely because

---

[11] Additionally, this Court notes that the trial judge gave the jurors an appropriate limiting instruction regarding their consideration of the challenged evidence:

> During the course of the trial, evidence was presented that the defendant was involved in the commission of an offense other than the one for which he is on trial. Such other offenses are not proof that the defendant is guilty of the current offense. Remember the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

State Rec., Vol. III of VI, Jury Instructions.

relevant evidence bearing upon the question at issue also tends to show the commission of other crimes by the accused does not make such evidence inadmissible.").

Moreover, even if the evidence *had been* improperly admitted, that alone would not necessarily warrant *habeas* relief. The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In the instant case, even if the challenged evidence had been wrongfully admitted into evidence, *which it was not*, it nevertheless cannot be said that the evidence played a crucial, critical, and highly significant role in petitioner's conviction in light of the other overwhelming evidence of his guilt, including the evidence that he was caught with cocaine on his person[12] and that the search of his home revealed a large amount of crack cocaine already individually prepackaged in a manner consistent for distribution rather than for personal use.[13] Accordingly, petitioner simply cannot demonstrate that the admission of the challenged evidence resulted in a denial of fundamental fairness.

---

[12] State Rec., Vol. IV of VI, transcript of November 7, 2001, pp. 40-41.

[13] State Rec., Vol. IV of VI, transcript of November 7, 2001, pp. 77-96.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's evidentiary claim.

### Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel was ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The state district court rejected petitioner's ineffective assistance of counsel claim, holding:

> [T]he relator maintains that the trial counsel failed to discover the intentional misrepresentation in Agent Lopinto's affidavit set forth in

- 14 -

the search warrant. The defendant maintains that under the holding of Culotta, had relator's counsel discovered and argued these points relating to the affidavit, the result of the proceeding would have been different. ...

The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial.

The Louisiana Supreme Court addressed this very issue in State v. Strahan, 325 So.2d 213 (La. 1975).

> "Further, failure of trial counsel to adequately question alibi witnesses, properly investigate the case, make an opening statement, have defendant take the stand, request particular special charges, and object to certain questions asked of witnesses at trial are all claimed to clearly show that defendant was not adequately and effectively represented at trial. We do not agree. These charges are either leveled at decisions made by counsel during the heat of trial, the correctness of which cannot be determined by hindsight, or the validity of which is not evident from the record." Id. at 233.

The defendant's claims are essentially with his counsel's decisions regarding witnesses and motions filed during trial. An examination of the record reveals that trial counsel filed various pretrial motions, including a Motion to Suppress Evidence. The Motion to Suppress Evidence Hearing was heard and argued by both sides on July 27, 2001. Upon further review, trial counsel cross-examined the State's witness, Deputy Joe Lapinto [sic] and review the search warrant during the motion hearing. The trial court denied the motion and trial counsel objected to the ruling. Trial counsel also filed other motions including a Motion in Limine and Motion to Exclude Statements. Defense counsel again had the opportunity to cross-examine Deputy Lapinto [sic] during trial. Defense counsel

>   presented a witness at trial.  Lastly, trial counsel also filed a Motion
>   for New Trial in this case. ...  According to <u>Strahan</u>, an attorney's
>   decisions as to trial ... tactics do not rise to the level of ineffective
>   assistance of counsel.  Thus, defendant's claim must fail because his
>   counsel's action at trial ... were considered trial tactics according to
>   <u>Strahan</u> and under the <u>Strickland</u> test, the defendant's claim must be
>   dismissed for failure of the defendant to meet the two-prong test.[14]

The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling,[15] and the Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.[16]

In his federal application, petitioner argues that his counsel should have discovered that Deputy Lopinto procured the search warrant for petitioner's residence at 3401 Edenborn Avenue through misrepresentations and then used that information to challenge the validity of the search. Specifically, petitioner argues that Lopinto falsely led the judge to believe that a confidential informant had provided information that petitioner used the Edenborn Avenue address as a "stash house" for his drugs.  He further argues that Lopinto deceived the court by implying that his representations in the affidavit were based on his firsthand knowledge.[17]

---

[14]  State Rec., Vol. II of VI, Order dated August 12, 2005.

[15]  <u>State v. Marshall</u>, No. 05-KH-976 (La. App. 5th Cir. Dec. 14, 2005) (unpublished); State Rec., Vol. VI of VI.

[16]  <u>State ex rel. Marshall v. State</u>, 939 So.2d 1274 (La. 2006) (No. 2006-KH-0919); State Rec., Vol. VI of VI.

[17]  In its response in this proceeding, the state contends that petitioner failed to exhaust his state court remedies with respect to the second part of his claim concerning the purported deception regarding the lack of firsthand knowledge.  However, even if there is a technical exhaustion problem, federal law "allows a federal court, in its discretion, to *deny habeas relief* on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state.  <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original); 28 U.S.C. § 2254(b)(2).  In light of the fact that the state has alternatively responded to the claims on the merits,

Regarding the former argument, the affidavit states: "According to source information, Marshall uses the Edenborn Avenue address as his storage house ...."[18] As the state notes in its response in this proceeding, that representation is clearly based on the New Orleans Police Department report which states:

> IN THE PAST FEW MONTHS THIRD DISTRICT NARCOTICS DETECTIVES HAVE RECEIVED INFORMATION FROM CONFIDENTIAL INFORMANTS, ON SEVERAL OCCASIONS, THAT MARIO MARSHALL HAS BEEN TRAFFICKING LARGE QUANTITIES OF COCAINE IN THE CITY OF NEW ORLEANS THIRD AND FIRST POLICE DISTRICTS, MORE SPECIFICALLY THE AREA OF MID CITY. THE INFORMANTS ADVISED THE DETECTIVES THAT MARSHALL WAS RESIDING IN METAIRIE, AND USED THIS RESIDENCE AS A SAFEHOUSE, STORING HIS NARCOTICS THERE.
> ....
> DETECTIVE MARTIN FURTHER INVESTIGATED AND LEARNED THAT MARSHALL WAS RESIDING AT 3401 EDENBORN, WHICH IS LOCATED IN THE FAT CITY AREA OF JEFFERSON PARISH.[19]

In light of the foregoing, it is evident that there is simply no merit to petitioner's contention that it was a misrepresentation for Lopinto to assert that confidential informants had provided information that petitioner used his Edenborn Avenue address as a "storage house" for his drug inventory. It

---

and the fact that petitioner's claims herein are clearly meritless, the undersigned recommends that as a matter of judicial economy the claims simply be considered and dismissed on the merits.

[18] State Rec., Vol. II of VI, Application for and Affidavit in Support of a Search and Seizure Warrant, p. 1.

[19] State Rec., Vol. II of VI, New Orleans Police Department report, p. 5 of 22.

necessarily follows that petitioner's counsel was not ineffective in failing to discover a *nonexistent* misrepresentation.

As to the second contention, i.e. that Lopinto deceived the court by implying that his representations in the affidavit were based on his firsthand knowledge, that again is simply untrue. In his affidavit, Lopinto expressly stated:

> During the past month, Agent Joseph Lopinto of the Jefferson Parish Sheriff's Office Narcotics Section was working with members of the New Orleans Police Department. ... Information obtained about this subject has been obtained from several sources. These sources include credible and reliable informants of the New Orleans Police Department.[20]

Lopinto's affidavit is in no way deceptive and, again, petitioner's counsel therefore was not ineffective in failing to discover a *nonexistent* deception.

Petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects that claim.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Mario Marshall be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after

---

[20] State Rec., Vol. II of VI, Application for and Affidavit in Support of a Search and Seizure Warrant, p. 1.

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fifth day of December, 2007.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**